Elbert S. Rule v. Commissioner.
Rule v. Commissioner
Docket No. 100189.
United States Tax Court
1943 Tax Ct. Memo LEXIS 533; 2 T.C.M. (CCH) 898; T.C.M. (RIA) 43450; July 11, 1943
*533 R. C. Foulston, Esq., for the petitioner. Benjamin L. Bird, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in petitioner's income tax for the year 1936 in the amount of $457.71. Petitioner concedes thae he erroncously failed to include in his gross income any part of the gain realized by him in the disposition of 1,530 shares of stock. He contends, however, that only a portion of the gain should be included in computing his taxable income since it resulted from the sale of capital assets. Respondent denies that the gain resulted from the sale of capital assets. He determined the deficiency upon the theory that the shares were retired by the issuing company in partial liquidation. He therefore included the entire amount of the gain in computing petitioner's net income. Findings of Fact Petitioner resides at Wichita, Kansas. His return of income for the year 1936, which was duly filed with the collector of internal revenue for the district of Kansas, showed a net loss for the year of $2,259.39. The Commissioner added "Gain on retirement of stock $12,521.89." The stock - 1,530 shares of the Golden *534 Rule Oil Company, sometimes hereinafter referred to as the corporation - had a cost basis in petitioner's hands of $159,587.81. Prior to the taxable year petitioner had been the directing head of a partnership - Golden Rule Refining Co. - in which he owned at least a 9/10ths interest. He was also the majority stockholder in the corporation. The partnership was indebted to the corporation in the amount of $160,058.20. represented by two notes. One was dated January 30, 1936, in the amount of $153,108.91 and the other February 28, 1936, in the amount of $6,949.29, both being due 60 days from date. Petitioner was personally indebted to the corporation in the amount of $11,000, this indebtedness being evidenced by a note dated January 30, 1936, due 60 days from date. The three notes were secured by shares of Golden Rule Oil Co. stock as follows: Date of Note
Amount
No. of Shares
January 30, 1936
$153,108.91
1,370
February 28, 1936
6,949.29
60
January 30, 1936
11,000.00
100
Total
$171,058.20
1,530
When the notes became due they were not paid. The corporation posted notice of sale of the collateral, as required by the statutes of Kansas, and on April 25, 1936, bid *535 it in, at public sale, for $172,109.70. This was the total amount due at that time on the three notes, including interest, and was also the book value of the shares on that date. The indebtedness was cancelled and the stock was held by the corporation as treasury stock. In October of 1937 the corporation made a deal to sell some of its stations to the Champlin Oil Co. At a special meeting of the stockholders held on October 13, 1937, a resolution was passed directing that 1,530 shares of the capital stock of the corporation be retired. This resolution was carried out in February of 1938 and the stock was then retired. Petitioner's gain was the difference between the cost of the stock, $159,587.81 and the amount of indebtedness cancelled on April 25, 1936 ($172,109.70) or $12,581.89. Part of the stock had been held for more than one year. If the gain resulted from the sale or exchange of capital assets then $10,254.32 should be taken into account in computing petitioner's net income for 1936. Opinion Respondent asks us to find as an ultimate fact that the stock acquired from petitioner was redeemed by the issuing corporation, was not reissued or sold, was eventually retired, comes *536 within the statutory definition of a "partial liquidation" (section 115 (i), Revenue Act of 1936) and that the gain resulting therefrom is taxable as ordinary income under the provisions of section 115 (c) of the Revenue Act of 1936. The cited sections are shown in the margin. [1] The requested finding cannot be made, not only because it is in the nature of a conclusion but also because we do not believe that there was a partial liquidation of the corporation during the taxable year, as such term has been construed by the Court and this Board. *537 In , the authorities were reviewed at length. It was pointed out that in determining whether a partial liquidation of a corporation had taken place the language used by Congress, examined in the light of its legislative history, controls. The view of the Circuit Court of Appeals for the First Circuit to the effect that "The statute contemplates partial liquidation of corporations, accompanied by partial retirement of outstanding stock" ( ) was adopted and it was held that placing and holding the stock in the treasury of the issuing corporation did not, ipso facto, constitute a retirement of the stock or make the amounts paid for it amounts received upon a "partial liquidation." A corporation may purchase and sell its own stock, , or sell a substantial portion of its property to its majority stockholder without making a "partial liquidation." . Whether a distribution in partial liquidation did, *538 or did not, occur is essentially a question of fact. . W. C. Robinson and , were recently cited with apparent approval by the Circuit Court of Appeals for the Third Circuit in . The ultimate retirement of the stock in a later year is a circumstance militating against petitioner's contention that the transaction should not be treated as a distribution in partial liquidation; but the testimony of the corporation's secretary-treasurer to the effect that there was no plan or arrangement in 1936 to retire the stock, together with the fact that the stock was held in the treasury for nearly two years before it was retired, convinces us that no "partial liquidation" occurred in 1936 and we so hold. The parties seem to agree that if no partial liquidation of the corporation occurred in 1936 the gain is a capital gain and only the portion thereof specified in section 117 (a) of the Revenue Act of 1936 is to be taken into account in computing petitioner's net income for the taxable *539 year. This is clearly correct. Losses resulting from the foreclosure of mortgages upon real estate ( ) or upon personal property ( ) as well as losses through the foreclosure of tax liens ( ) are all capital losses, limited by section 117, supra. By a parity of reasoning the gain realized by this petitioner is a capital gain. As stated by the Circuit Court of Appeals for the Second Circuit in : "* * * if the customer realized a gain through such a liquidation [i.e. through a sale of pledged property] he would be entitled to limit his taxable gain in computing net income to the percentages provided by section 117 (a)." The deficiency shall be recomputed, taking into account $10,254.32 of the gain realized by petitioner through the disposition of the Golden Rule Oil Co. stock, and Decision will be entered under Rule *540 50.
Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * * * *
(c) Distributions in Liquidation. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence. "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * * * *
(i) Definition of Partial Liquidation. - As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.↩